512 A.2d 24

**Belinda PATRICK,**

v.

**CHEROKEE INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 12, 1985.

Filed July 11, 1986.

Jerry L. Cohen, Philadelphia, for appellant.

Gary S. Dion, Philadelphia, for appellee.

Before ROWLEY, DEL SOLE and BECK, JJ.

BECK, Judge:

This is an appeal from a trial court order denying appellant's Petition to Vacate Award of Arbitrators. Appellant Cherokee Insurance Company ("Cherokee") contends that the arbitrators' award and the trial court's order in favor of the appellee-plaintiff were based on an error of law. We disagree, and therefore affirm.

Appellee Belinda Patrick was injured on July 22, 1981, when she was involved in a collision with an uninsured motorist while riding as a passenger in a taxicab owned and operated by Yellow Cab Company of Philadelphia ("Yellow Cab"). Yellow Cab is a common carrier authorized to carry passengers for hire within Pennsylvania. At the time the cause of action arose, Yellow Cab was insured under a policy of automobile insurance issued by appellant Cherokee. Included in the policy of insurance was an unsigned document, or endorsement, entitled "Rejection of Uninsured Motorist Coverage" ("Rejection Endorsement"). The endorsement stated that although a space for the insured's signature was provided, no signature was required to reject uninsured motorist coverage if the endorsement was issued before the effective date of the policy.

An arbitration hearing was held on May 24, 1983, in order to determine Patrick's claim against Cherokee under the

Uninsured Motorist Act ("Act"), Act of August 14, 1963, P.L. 909, § 1, *as amended,* 40 P.S. § 2000. The arbitrators rendered a unanimous award of $20,000.00 for Patrick. Cherokee then filed its Petition to Vacate Award of Arbitrators on the ground that the arbitrators had disregarded the Rejection Endorsement, and had thereby committed an error of law. The trial court denied Cherokee's petition and this appeal followed.

█ The standard of review in this case is governed by Section 7302(d)(2) of the Uniform Arbitration Act ("1980 Act") which provides as follows:

> Where this paragraph is applicable *a court in reviewing an arbitration award* pursuant to this subchapter *shall,* notwithstanding any other provision ... *modify or correct the award where the award is contrary to law* and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict.

42 Pa.C.S.A. § 7302(d)(2) (emphasis added).

The arbitration hearing was conducted pursuant to the Arbitration Act of 1927, P.L. 381, *as amended* 5 P.S. § 161 *et seq.* Nonetheless, we are bound by the provisions of the 1980 Act. *See* 42 Pa.C.S.A. § 7302(a). It is important to note that the Arbitration Act of 1927 was repealed by the JARA Continuation Act of 1980, Act of October 5, 1980, P.L. 693, No. 142 § 501(c), effective in 60 days.[1] *Obdyke v. Harleysville Mutual Insurance Co.,* 299 Pa.Super. 298, 300 n. 1, 445 A.2d 763, 765 n. 1 (1982). Consequently, we must rely on the provisions of Section 7302(d)(2) of the 1980 Act to guide us. *See Martin v. State Automobile Insurance*

---

1. A review of the historical note following § 7302 reveals under the heading "Application":

> Section 501(b) of Act 1980, Oct. 5, P.L. 693 No. 142, provides as follows:
> The provisions of 42 Pa.C.S. § 7302(d)(2) (relating to special application) shall be applicable to any nonjudicial arbitration pursuant to:

*Association*, 344 Pa.Super. 531, 537, 496 A.2d 1233, 1236 (1985); *see also Pasternak v. State Farm Mutual Automobile Insurance Co.*, 350 Pa.Super. 448, 504 A.2d 925 (1986).[2]

Cherokee argues that the trial court erred in holding as a matter of law that the Rejection Endorsement contained in Yellow Cab's policy was insufficient to relieve the insurance company of the responsibility of providing uninsured motorist benefits to appellee. The Uninsured Motorist Act ("Act") allows common carriers to reject uninsured motorist coverage in certain limited circumstances:

(a) No motor vehicle liability policy of insurance ... shall be ... issued ... unless coverage is provided ... for the protection of persons insured thereunder who are legally entitled to recover damages from ... operators of uninsured motor vehicles because of bodily injury, ... *Provided that*:

. . . .

(2) An ... operator of any ... motor vehicle operated for the carriage of passengers for hire ... *shall have the right to reject such coverage in writing in which event, such coverage need not be provided....*

40 P.S. § 2000(a)(2) (emphasis added).

■ The question before us then is whether the Rejection Endorsement provided by the insurer Cherokee meets the

(2) An agreement heretofore or hereafter made which expressly provides for arbitration pursuant to the former provisions of the Act of April 25, 1927 (P.L. 381, No. 248) relating to statutory arbitration.

**2.** We recognize that appellant Cherokee petitioned the lower court to vacate the award rather than modify or correct it. Under Section 7314 of the 1980 Act, a court's power to vacate an award may not be exercised on the grounds that the award is contrary to law. The power to enter the equivalent of a judgment notwithstanding the verdict is provided as part of the power to modify or correct an award under Section 7302(d)(2). *Compare* § 7314, 42 Pa.C.S.A. § 7314, *with* § 7302(d)(2), 42 Pa.C.S.A. § 7302(d)(2). Thus, Cherokee should have petitioned to modify or correct the award, instead of petitioning to vacate it. *See Pasternak*, 350 Pa.Super. at 452, 504 A.2d at 927. However, inasmuch as it is clear from the contents of Cherokee's petition that Cherokee was asking the trial court to enter a judgment n.o.v., we shall consider Cherokee's petition as a petition to modify or correct the arbitrators' award pursuant to 42 Pa.C.S.A. § 7302(d)(2).

statute's requirement of a rejection "in writing" of Yellow Cab's uninsured motorist coverage. We hold that the endorsement did not comply with the statute.

In its opinion, the lower court cited the case of *Modesta v. SEPTA*, 503 Pa. 437, 469 A.2d 1019 (1983), for the proposition that if an insured common carrier executed a written rejection in accordance with the dictates of 40 P.S. § 2000(a)(2), it would assume the burden of providing uninsured motorist benefits to its passengers.[3] In light of our holding that there was no rejection in the case *sub judice*, we need not consider the question of the common carrier's responsibility for uninsured motorist coverage in a case where a written rejection was made in compliance with the statute's requirements.

The Act is clearly based on public policy considerations. Its purpose is "to afford financial recompense to persons who receive injuries ... solely through the negligence of motorists, who, because they are uninsured ... cannot be made to satisfy a judgment." *Johnson v. Concord Mutual Insurance Co.*, 450 Pa. 614, 619, 300 A.2d 61, 64 (1973) (citation omitted). Because of its public policy concerns, the Act must be broadly and liberally construed to enable it to achieve its purpose. *Id.*, 450 Pa. at 619, 300 A.2d at 64; *Novoseller v. Royal Globe Insurance Co.*, 317 Pa.Super. 217, 463 A.2d 1163 (1983); *Boyle v. State Farm Mut. Auto. Ins. Co.*, 310 Pa.Super. 10, 21, 456 A.2d 156, 162 (1983). Conversely, the rejection provisions detract from the public policy considerations, and must therefore be narrowly and strictly construed. *Johnson*, 450 Pa. at 619, 300 A.2d at 64. As a result, the Act provides a presumption of coverage unless equally strong legal or equitable considerations to the contrary are present. *Boyle*, 310 Pa.Super. at 21, 456

3. Appellant Cherokee correctly distinguishes *Modesta* from the case at hand. *Modesta*, which overruled *Johnson v. Yellow Cab Co.*, 456 Pa. 256, 317 A.2d 245 (1974), held that a *self-insured* common carrier must provide uninsured motorist coverage, and did not address the issue of rejection of such coverage by an *insured* common carrier.

A.2d at 162; *Sands v. Granite Mutual Insurance Co.*, 232 Pa.Super. 70, 80, 331 A.2d 711, 716–17 (1974).

The presumption of coverage requires a court to construe ambiguous language in insurance contracts in a manner most favorable to the insured. *See Patton v. Patton*, 413 Pa. 566, 198 A.2d 578 (1964); *State Farm Insurance Co. v. Bullock*, 316 Pa.Super. 475, 463 A.2d 463 (1983); *Boyle*, 310 Pa.Super. at 21, 456 A.2d at 162. Our Supreme Court has therefore stated that in order to be effective, a waiver of uninsured motorist coverage must

> manifes[t] the intentional relinquishment of this legislatively granted right of insurance protection.... *[T]here must be a clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it.*
>
> ... *The statutory mandate may be complied with only by* including uninsured motorist coverage or by *an affirmatively expressed rejection in writing by the insured.*

*Johnson,* 450 Pa. at 620, 300 A.2d at 64–65 (citations omitted) (emphasis added); *Sands,* 232 Pa.Super. at 80, 331 A.2d at 717.

In *Johnson,* the insurer's printed form contained a single line which read: "I HEREBY STATE THAT I DO NOT DESIRE UNINSURED MOTORIST COVERAGE." The claimed waiver was subscribed by the insured. Despite the insured's signature, the court held that the rejection was ineffective because the form did not contain language which clearly and specifically apprised the insured of the nature of the right he was relinquishing. Moreover, the record failed to reveal any testimony concerning the signing of the form which suggested that the insured knowingly and affirmatively rejected uninsured motorist coverage. 450 Pa. at 621, 300 A.2d at 621.

The Rejection Endorsement at issue manifests no intention by Yellow Cab to relinquish uninsured motorist insurance. The unsigned document states simply: "This endorsement cancels your Protection Against Uninsured Mo-

torists Endorsement. All other terms of the policy remain the same." A line is then provided for the insured's signature under the statement "I agree to the provisions of this endorsement." A note at the bottom of the page states that a signature is not always required. Nothing on the face of the Rejection Endorsement or in the record indicates that the insured affirmatively rejected uninsured motorist coverage.

Clearly, appellant Cherokee has failed to show an unequivocal and decisive act by Yellow Cab which demonstrates an evident purpose to waive its right to uninsured motorist coverage. *See, e.g., Sands,* 232 Pa.Super. at 80, 331 A.2d at 717. We therefore conclude that the trial court properly held that the Rejection Endorsement does not constitute an affirmatively expressed rejection in writing which relieves Cherokee of its responsibility to provide either uninsured motorist coverage to Yellow Cab or uninsured motorist benefits to the appellee.

Accordingly, the order below is affirmed.